# Minutes of Proceedings

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------------x
Date:    **July 28, 2009**                                                        :
---------------------------------------------------------------------------------x
In re:                                                                            :
                                                                                  :    Case No. 08-13783 (AJG)
*CIENA CAPITAL LLC f/k/a BUSINESS LOAN*                                           :    (Jointly Administered)
*EXPRESS, LLC, et al.*,                                                           :
                                       Debtors.                                   :
---------------------------------------------------------------------------------x
*ALSTRA CAPITAL MANAGEMENT LLC*,                                                  :
                                       Plaintiff,                                 :
         v.                                                                       :    Adv. Pro. No. 09-01127 (AJG)
                                                                                  :
*PGREF I 1633 BROADWAY TOWER L.P.*,                                               :
                                       Defendant.                                 :
---------------------------------------------------------------------------------x


Present:        Hon. Arthur J. Gonzalez
                Bankruptcy Judge


Appearances:

Rosenberg & Estis, P.C.                              Becker, Glynn, Melamed & Muffly LLP
Attorneys for PGREF I 1633 Broadway Tower L.P.       Co-Attorneys for PGREF 1633 Broadway Tower L.P.
New York, New York                                   New York, New York
        By:    Howard W. Kingsley, Esq.                      By:    Chester B. Salomon, Esq.
                       Of Counsel                                         Of Counsel

Jaffe, Ross & Light LLP                              Wayne Greenwald, P.C.
Attorneys for Alstra Capital Management LLC          Co-Attorney for Alstra Capital Management LLC
New York, New York                                   New York, New York
        By:    Burton R. Ross, Esq.                          By:    Wayne M. Greenwald, Esq.
                       Of Counsel                                         Of Counsel

Hunton & Williams LLP
Attorneys for the Debtors.
Miami, Florida
        By:    Andrew Kamensky, Esq.
                       Of Counsel


**Proceedings:**    ⌧    **Motion ("Injunction Motion") by Alstra Capital Management LLC ("Alstra") for a Preliminary Injunction Restraining Landlord from drawing down on Letter of Credit..**

                    ⌧    **Motion ("Remand and Abstention Motion") by Alstra seeking order Remanding Action to State Court or, in the Alternative, having the Court Abstain from Exercising Jurisdiction**.

                    ⌧    **Motion ("Landlord's Summary Judgment Motion") by PGREF I 1633 Broadway Tower L.P. for summary judgment**

Orders: ▪ **For the reasons set forth on the record on July 28, 2009, a copy of which is attached hereto as Exhibit "A,"**

    ▪ - **the Injunction Motion is denied, and any temporary restraining order is lifted**;

    ▪ - **the Remand and Abstention Motion is denied**;

    ▪ - **With respect to the Landlord's Summary Judgment Motion, the Court grants summary judgment in favor of the Landlord on its first Counterclaim and summary judgment in favor of the Landlord to dismiss the third, fourth and fifth causes of action of Alstra's Complaint. In addition, the first and second causes of action of the Complaint are moot**; and

    ▪ - **the parties are to contact Chambers to set a date for a hearing to consider the Landlord's request for attorney's fees, costs and expenses, pursuant to the terms of the Leasehold documents**.

_____

FOR THE COURT: Vito Genna, Clerk of the Court

BY THE COURT:

*s/Arthur J. Gonzalez*          **07/28/2009**          Jacqueline De Pierola
United States Bankruptcy Judge      Date                    Courtroom Deputy

Exhibit "A"

This matter arises out of the Rejection Order issued by this Court on February 3, 2009. Pursuant to the terms of the Rejection Order, this Court retained jurisdiction with respect to all matters arising from or related to its implementation.

Pursuant to a lease, dated May 5, 2005 (the "Lease") entered into by its predecessor in interest, Paramount Group, as agent for PGREF I 1633 Broadway Tower L.P. (collectively, the "Landlord"), was the Landlord of certain space leased in a commercial building to Ciena Capital LLC (the "Debtor"). The Lease afforded the Debtor, as tenant, the opportunity to sublease portions of the leased space upon obtaining the consent of the Landlord. Pursuant to a sublease, dated December 5, 2005 (the "Sublease"), the Debtor subleased a portion of the leased space to Alstra Capital Management LLC ("Alstra"), as subtenant. The leasehold interests are reflected in the Lease between the Landlord and the Debtor, a Sublease between the Debtor and Alstra, and a Consent, dated February 6, 2006 (the "Consent"), to the subleasing of the portion of the space to Alstra executed by the Landlord, the Debtor and Alstra. (The Lease, Sublease and Consent are collectively referred to as the "Leasehold documents").

With certain specified exceptions, the terms of the Lease were incorporated into the Sublease. Under the terms of the Sublease, to secure its obligations, Alstra had the option of providing a security deposit or posting an unconditional letter of credit. Alstra chose to post a letter of credit (the "Letter of Credit").

Pursuant to paragraph 5(a) of the Consent,

> If, during the term of the Sublease, the term of the Lease shall expire or the Lease shall sooner terminate, or Tenant shall surrender the Lease to Landlord, Landlord, at its option, upon written notice given to Tenant and Subtenant not more that thirty (30) days after the effective date of such expiration, termination or surrender, and without any additional or further agreement of any kind on the part of the Tenant or Subtenant, may elect to require Subtenant to attorn to Landlord

>pursuant to the then executory provision of the Sublease . . . [I]n the event Landlord so elects (i) Tenant will deliver to Landlord any security deposit which Tenant is then holding under the Sublease and (ii) Subtenant will reimburse Landlord for any costs that may be incurred by Landlord in connection with such attornment, including without limitation, the cost of making such attornment. The foregoing provisions of this paragraph 5(a) shall apply notwithstanding that, as a matter of law, the Sublease may terminate upon the expiration or termination of Lease and shall be self-operative upon any such election by Landlord to require attornment.

In December 2008, the Debtor served notice on the Landlord and Alstra of its motion seeking to reject the Lease with Landlord and the Sublease with Alstra. The Landlord filed opposition to the retroactive rejection of its Lease with tenant. In addition, Landlord filed its own motion for immediate payment of rent and related charges. The Landlord's motion was not served on Alstra. However, Alstra received actual notice of the Landlord's position as it impacted Alstra, as evidenced by Alstra's negotiation with the Debtor concerning the language to be included in the proposed rejection order.

Prior to the hearing on the motions, the Debtor provided Alstra with the revised draft of the proposed rejection order to be presented to the Court. Two paragraphs of the revised order addressed issues impacting Alstra with respect to Landlord's election to require it to attorn to the Landlord. First, paragraph 5 of the revised order, which in the original proposed order prohibited Landlord from using Alstra's Letter of Credit in the event of attornment absent a further court order or agreement, was modified to allow the Letter of Credit to be transferred to the Landlord. This alteration was included to address the Landlord's objection to its ability to draw down on Alstra's Letter of Credit and use it to offset any unpaid rent upon any attornment. Second, because the rejection motion sought to reject the leases *nunc pro tunc*, the proposed rejection order was altered to address the Landlord's objection to the fact that its time to file any

required notices for attornment would be curtailed or eliminated under the proposed rejection order. The revised proposed rejection order specifically addressed this concern by providing that if the Landlord elected to require Alstra to attorn, it would have up to 30 days from the date of the Rejection Order to provide Alstra with such notice. Indeed, the Landlord provided notice of its election to require Alstra to attorn on the date of entry of the Rejection Order.

Alstra objected to the proposed revised rejection order because it perceived it as giving the Landlord access to the Letter of Credit prior to providing notice of the attornment. Alstra viewed this as giving the Landlord an improved position in relation to what the Consent agreement provided. Alstra also contended that the Landlord could not force it to attorn and that the revised proposed order would bolster the Landlord's attornment argument. As a result, Alstra requested inclusion of language to the effect that the order would be without prejudice to the rights of the Landlord and Alstra as against each other.

The Debtor did not view the revised proposed order as improving the Landlord's position in relation to the rights under the Consent. Rather, it only viewed the revised order as ensuring that the Landlord's notice period for an attornment election was not eliminated as a result of the *nunc pro tunc* application of the rejection order. This was accomplished by allowing the 30-day notice period for the attornment election to run from the date of entry of the rejection order. Nevertheless, in response to Alstra's concern, the proposed rejection order was further revised to add paragraph 10 which provided that nothing in the Rejection Order would affect the rights of Landlord and Alstra against each other. Alstra was provided with a copy of the proposed rejection order, as modified to respond to its request.

After the revised proposed rejection order was provided to Alstra, Alstra did not appear

3

or oppose the Debtor's motion to reject the Lease or Sublease. The Court entered the Rejection Order on February 3, 2009 which provided that the Lease and Sublease were rejected *nunc pro tunc* as of December 31, 2008.

Alstra was provided with notice of the Motion to reject the Lease and Sublease. The Lease and the Sublease were interrelated because the Sublease incorporated the Lease. Therefore, Alstra had notice that the hearing would address issues concerning the related Lease that could impact terms of the Sublease. Although the Landlord did not serve Alstra with its opposition to the rejection motion or its own motion for payment of rent and related charges, Alstra had notice of the Landlord's position as it was provided with copies of the proposed order and subsequent modifications to that order which addressed the Landlord's concerns. Inasmuch as the Lease, Sublease and Consent were interrelated and because the Lease was incorporated into the Sublease, any position taken by the Landlord that was included in the proposed rejection order could potentially impact the sublessee. Certain of the modification specifically addressed issues related to the issue of attornment. Indeed, Alstra participated in negotiations with the Debtor concerning terms of the revised order that had been requested by the Landlord. Thus, Alstra had actual notice of the Landlord's position, participated in negotiations concerning the terms of the proposed order and was aware of the hearing date. Although Alstra did not attend the hearing, it was aware of the hearing date and was afforded an opportunity to attend and be heard. Moreover, Alstra was involved in the negotiation of the proposed order and was aware that the amended proposed order was being presented to the Court.

Alstra paid the rent due on the Sublease through December 31, 2008. As previously noted, the Landlord provided Alstra with notice of its election to require Alstra to attorn to the

Landlord. Alstra did not attorn to the Landlord and moved out of the premises on February 26, 2009.

The notice that the Landlord provided to Alstra of its decision to have the latter entity attorn to it was in compliance with the Rejection Order entered by this Court. Alstra was provided with notice of the motion to reject the Lease and Sublease. Alstra knew that the two agreements were interrelated and that the Sublease incorporated terms of the Lease. Having been afforded an opportunity to be heard concerning the relief sought in the rejection motion, and having negotiated on terms to be included in the Rejection Order, Alstra is bound by the terms of the Rejection Order. Moreover, Alstra did not appeal the entry of the Rejection Order, which included this extension for the period to notice the election for attornment. Therefore, the extension in the Rejection Order, affording the Landlord 30 days from entry of the Rejection Order to notice its intent to require Alstra to attorn, was effective as against Alstra. Thus, if the Landlord otherwise had the right to require Alstra to attorn to it, by providing notice of that intent on the date of entry of the Rejection Order, the Landlord complied with the notice requirement for attornment.

Moreover, paragraph 10 of the Rejection Order, which provided that nothing in the Rejection Order would affect the rights of the Landlord and Alstra against each other, was added to the Rejection Order at Alstra's request in response to Alstra's concern that the order might be read to provide the Landlord with greater substantive rights concerning attornment. While the addition of that clause made clear that substantive rights were not expanded, the clause did not limit any of the Landlord's attornment rights as set forth in the specific sections of the Leasehold documents. Further, interpreting the order in the manner suggested by Alstra would imply that

5

the addition of general paragraph 10 eliminated the specific rights provided to the Landlord in paragraph 5 of the Consent.  In addition, that reading of paragraph 10 of the Rejection Order would make the Rejection Order internally inconsistent because the Rejection Order specifically afforded the Landlord 30 days from entry of the Rejection Order to exercise its attornment rights while that reading of paragraph 10 would have eliminated any such rights.

As just addressed, this Court has jurisdiction to interpret its own order and expressly retained such jurisdiction in the Rejection Order.  The Rejection Order expressly set forth the notice requirement for any election by the Landlord to seek Alstra's attornment.  Thus, this Court has jurisdiction to determine whether the Landlord's attornment notice was timely.  Alstra argues that the Court does not have jurisdiction to determine the balance of the action, which involves two nondebtors.  Alstra commenced its action against the Landlord in state court.  In its third cause of action, Alstra sought a declaration that section 365(h)(1)(A)(i) of the Bankruptcy Code allowed it to treat the Sublease as terminated and, therefore, Alstra sought a return of the Letter of Credit that had been transferred to the Landlord by the Debtor.  In the fourth cause of action, Alstra sought a declaration the Landlord was precluded from requiring Alstra to attorn based upon the allegedly terminated Sublease.  In the fifth cause of action, Alstra sought a permanent injunction ordering the Landlord to return the letter of credit to Alstra.  The Landlord removed the action from the state court to this Court as related to the Debtor's bankruptcy case because the action required an interpretation of this Court's Rejection Order and the interpretation of section 365(h)(1)(A)(i), a substantive section of the Bankruptcy Code.

In seeking to apply a section of title 11 of the United States Code (the "Bankruptcy Code"), Alstra invokes the Court's "arising under" jurisdiction.  Congress used the phrase

6

"arising under title 11" to describe those proceedings that involve a cause of action created or determined by a provision of title 11. *Wood v. Wood (Matter of Wood)*, 825 F.2d 90, 96 (5th Cir.1987). Indeed, the only reason that Alstra can avail itself of that section of title 11 is because of the Debtor's bankruptcy filing. Had there been no bankruptcy case, there would be no basis upon which Alstra could seek to have that section apply.

The claims "arising under" Title 11 need not affect or benefit the estate as a condition of bankruptcy jurisdiction. *In re Housecraft Industries USA, Inc.*, 310 F.3d 64 (2d Cir. 2002). Consequently, "arising under" jurisdiction is present "even if the litigation could not affect the estate." *Id*. Thus, the Court has jurisdiction to determine the issue raised by Alstra concerning that Bankruptcy Code section. Further, because the resolution of all of the remaining issues in the action depend upon whether the Lease and Sublease terminated, and because that determination flows from an interpretation of various Bankruptcy Code sections, in the interest of efficiency, the Court concludes that it should exercise its concurrent jurisdiction to determine the balance of the dispute.

Moreover, although Alstra argues that the bar date to file proofs of claim has passed, the Landlord has indicated that if Alstra does not attorn to it, it can seek to file a late-filed proof of claim against the Debtor. The Court is not prepared at this point to rule whether or not any such claim would be deemed timely. However, if any such filed proof of claim were deemed timely, it would directly impact the Debtors' estate, thereby affording this Court "related to" jurisdiction concerning the matter.

Pursuant to section 365(h)(1)(A)(i), if a lessor-debtor rejects an unexpired lease of real property and

7

> if the rejection . . . amounts to such a breach as would entitle the lessee to treat such lease as terminated by virtue of its terms, applicable nonbankruptcy law, or any agreement made by the lessee, then the lessee under such lease may treat such lease as terminated by the rejection.

Here, the Debtor as lessor rejected the Sublease with Alstra. Rejection of a lease, however, is not the same as termination of a lease. *Stoltz v. Brattleboro Hous. Auth. (In re Stolz)*, 315 F.3d 80, 85-86 n.1 (2d Cir. 2002). If a lease is rejected, it is treated as being breached immediately prior to the petition date, and the parties are left with whatever remedies are available outside of bankruptcy law. *Id*. In part, the breach of the contract is not treated as a termination, in recognition of the fact that terminating a contract may have consequences that affect parties other than the contracting parties. *Med. Malpractice Ins. Assoc. v. Hirsch (In re Lavigne)*, 114 F.3d 379, 387 (2d Cir. 1997) (citation omitted). "Rejection does not change the substantive rights of the parties to the contract or lease, but merely means that the bankruptcy estate itself will not become a party to it." Andrew, EXECUTORY CONTRACTS IN BANKRUPTCY: UNDERSTANDING "REJECTION," 59 U. Colo. L. R. 845, 848 (1988). While rejection "frees the estate from the obligation to perform; it does not make the contract disappear." *Lavigne*, 114 F.3d at 387 (quoting *In re Drexel Burnham Lambert Group Inc.*, 138 B.R. 687, 703 (Bankr. S.D.N.Y. 1992)) Thus, rejection does not affect contract or lease liabilities. Andrew, REJECTION, 59 U. Colo. L. R. at 849. A debtor's liabilities under a contract or lease remain "intact to form the basis of a claim" against the bankruptcy estate. *Id*. at 888. The effect of rejection is that the *estate* does not become obligated on the contract or lease, it does not affect a *debtor's* obligations which continue and which form the basis of the non-debtor's claim. *Id*. at 889. Thus, rejection is the equivalent of electing not to assume a contract or lease. *Id*. at 849. A rejected lease is treated as abandoned and not a part of the bankruptcy estate. *Stolz*, 315 F.3d at

85-86 n.1.

While the rejection here of the Lease and Sublease meant that the Debtor abandoned those property interests, neither the Lease nor the Sublease were terminated by the rejection. The abandonment, therefore, would be considered a surrender of the Lease and Sublease. Moreover, as long as the Landlord elected to require Alstra to attorn to it, Alstra retained its right to remain as tenant with respect to the real property. Therefore, because Alstra retained its tenancy rights under the Sublease, the rejection did not amount to such a breach as would entitle the lessee to treat such lease as terminated by virtue of its terms, applicable nonbankruptcy law, or any agreement made by the lessee. This is unlike the situation where a non-residential lessee is required to immediately surrender possession upon rejection, where rejection is tantamount to termination. *Cromwell Field Assocs. v. May Dept. Stores Co.*, 5 Fed. Appx. 186 *2 (4th Cir. 2001). Thus, section 365(h)(1)(A)(i) does not apply by its terms. If the Landlord had elected not to require Alstra to attorn, it is arguable that the breach might then have amounted to a termination, which would then have given Alstra the opportunity to treat the Sublease as terminated pursuant to section 365(h)(1)(A)(i).

Moreover, rejection is treated as a breach to allow the non-debtor party to have a claim against the debtor. *Lavigne*, 114 F.3d at 387. To determine the parties rights after that breach, state law must be consulted. *Id.* Under New York law, only a breach which substantially defeats the purpose of a contract can be grounds for its rescission. *Id.* Thus, to rescind the contract, Alstra would have to show that the breach was material. *Id.* Here, the purpose of the Sublease was to provide Alstra with the rental space in the commercial building for the duration of the Sublease term. Indeed, the Lease, Sublease and Consent expressly contemplated that the

Landlord could step in to take over as Alstra's direct landlord in the event that the Debtor was no longer functioning in that role.  Thus, the Landlord's determination to require Alstra to attorn to it as Landlord was not only not a material breach of the Sublease, it was expressly provided for in the Leasehold documents.  Alstra executed the Consent which provided for this eventuality.

Section 5(a) of the Consent provides that if during the term of the Lease, the Debtor were to surrender the Lease to the Landlord, the Landlord had the option, "without any additional or further agreement of any kind on the part of [the Debtor or Alstra to] elect to require [Alstra] to attorn to [the] Landlord pursuant to the then executory provision of the Sublease."

The terms of the Leasehold documents require Alstra to attorn to the Landlord.  The Sublease was not terminated and Alstra as a party to the Consent was bound by the terms of the Consent to attorn to the Landlord.  Notice in compliance with the Rejection Order was provided and, as a result, Alstra was the Landlord's direct tenant as of January 1, 2009.

Based upon the foregoing, the Court concludes that Alstra was duly noticed concerning the rejection motions and had an opportunity to be heard and that Alstra is bound by the terms of the Rejection Order.  The Court further concludes that Alstra received effective notice of its obligation to attorn to the Landlord and that it became the Landlord's direct tenant on January 1, 2009.

The Court has core bankruptcy jurisdiction to interpret its own Order and to interpret substantive sections of the Bankruptcy Code.  Moreover, because the resolution of the remaining issues flow from this Court's determination of core bankruptcy issues, the Court denies Alstra's motion to remand the action to state court or to abstain from exercising its jurisdiction over this adversary proceeding.  In addition, if a late filed proof of claim in the Debtor's bankruptcy case

were deemed timely under the circumstances, it would directly impact the Debtor's estate.

Further, the Court grants the Landlord's motion for summary judgment and grants judgment in favor of the Landlord on its first counterclaim. In addition, the Court dismisses Alstra's third, fourth and fifth causes of action of the complaint. Further, the Court denies Alstra's motion for a preliminary injunction concerning the Letter of Credit. Any temporary restraining order that was placed on the Landlord's ability to draw down on the Letter of Credit is lifted. The parties agree that Alstra's first and second cause of action were mooted as a result of Alstra having vacated the premises. Therefore, the Complaint is dismissed. Finally, the parties are to contact Chambers to set a date for a hearing to consider the Landlord's request for attorney's fees, costs and expenses, pursuant to the terms of the Leasehold documents.